MICHAEL RAY HOGAN, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 16778

February 6, 1987                    732 P.2d 422

*Morgan D. Harris,* Public Defender, *George E. Franzen,* Deputy Public Defender, and *Marcus D. Cooper,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City, *Robert J. Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

---

--

# OPINION

*Per Curiam:*

In the afternoon of November 19, 1984, after a weekend marked by quarrels and death threats, appellant Michael Hogan shot and killed his female companion, Heidi Hinkley. Hogan also fired five bullets into the victim's teenage daughter, who nevertheless survived and was able to testify at trial.

Hogan was convicted of murder and attempted murder, each involving the use of a deadly weapon; he was sentenced to death. We affirm.

Hogan alleges that the trial court erred in refusing to ask a number of proposed voir dire questions. Decisions concerning the scope of voir dire and the manner in which it is conducted are reviewable only for abuse of discretion. Summers v. State, 102 Nev. 195, 718 P.2d 676 (1986). Although we certainly favor a thorough examination of prospective jurors, particularly in capital cases, we perceive no abuse of discretion. Many of Hogan's proposed questions were repetitive; others appeared aimed more at indoctrination than acquisition of information; a number dealt with issues of law to be covered in future jury instructions, and so were excludable under Oliver v. State, 85 Nev. 418, 456 P.2d 431 (1969). Several of the questions were asked, although perhaps not in the precise form Hogan proposed. Therefore, we perceive no basis for reversal on this ground.

Hogan next contends that the trial court erred in several of its evidentiary rulings. First, the court properly allowed testimony that Hogan, several days before the killing, had dropped Ms. Hinkley to the ground from shoulder height. This was evidence of "other acts," admissible under NRS 48.045(2) to demonstrate ill-will as a motive for the crime.

Second, hearsay testimony that Hogan had threatened to kill Ms. Hinkley was admissible under NRS 51.095, the "excited utterance" exception to the hearsay rule. Two witnesses testified that the victim told them Hogan had threatened to kill her. One statement came just after the threat; the other, approximately an hour later. In each case, Ms. Hinkley was frightened, shaking, nervous and crying. Thus, the court did not err in finding the statements admissible, *see* Dearing v. State, 100 Nev. 590, 691 P.2d 419 (1984).

Third, we perceive no error in the trial court's ruling that the State could use the preliminary hearing testimony of the county's

pathologist, Doctor Green. The court was independently aware that coronary bypass surgery rendered the doctor unavailable to testify at the time of the trial. Therefore, any deficiency in the State's formal showing of unavailability was inconsequential. The requirements of NRS 171.198(7) and Drummond v. State, 86 Nev. 4, 462 P.2d 1012 (1976), were satisfied.

The trial court also ruled correctly, in the penalty phase of trial, that the jury could consider as an aggravating circumstance the State's allegation that Hogan was previously convicted of a felony involving violence to the person of another, NRS 200.033(2). Hogan was convicted of manslaughter in 1971, pursuant to a guilty plea in an Iowa prosecution. He now alleges that the Iowa court did not tell him the elements of that offense. There is no requirement that it do so; all that is necessary is that the accused actually be aware of the nature of the offense. It is proper to presume that counsel has explained the elements of the crime to the accused, Henderson v. Morgan, 426 U.S. 637, 647 (1976); *see also* Bryant v. State, 102 Nev. 268, 721 P.2d 364 (1986). Hogan has done nothing to rebut that presumption. Further, the transcript of the Iowa proceedings discloses that Hogan received adequate opportunity to consult with his attorneys and obtain their advice. In addition, the Iowa sentencing report states that the court informed Hogan of the nature of the crime and asked for his comments before pronouncing sentence. Hogan thereafter affirmed the propriety of his plea by serving his sentence for the manslaughter conviction without any challenge to its validity.[1]

The court likewise did not err in refusing to disallow as an aggravating circumstance the allegation that Hogan had "knowingly created a great risk of death to more than one person by means of a . . . course of action which would normally be hazardous to the lives of more than one person," NRS 200.033(3). While there is a divergence of authority on this question, we believe that the statute includes a "course of action" consisting of two intentional shootings closely related in time and place, particularly where the second attack may have

---

[1] Hogan also alleges that there was no adequate waiver of his rights, as required by Boykin v. Alabama, 395 U.S. 238 (1969). We have reviewed the transcript and conclude that each of the rights enumerated in *Boykin* was waived, though the Iowa court referred to them rather obliquely. And allegations of prosecutorial misconduct in connection with questions regarding the Iowa conviction are meritless. To the extent that a question as to whether manslaughter was a lesser offense than that originally charged may have raised an inaccurate inference, the proper tool to dispel that inference was cross-examination. *Cf.* Wallace v. State, 84 Nev. 603, 606-07, 447 P.2d 30, 31-32 (1968). Hogan declined to cross-examine. Therefore, he can hardly assert that any prejudice is the fault of others.

been motivated by a desire to escape detection in the original shooting.[2] *Accord* Alvord v. State, 322 So.2d 533 (Fla. 1975), *cert. denied,* 428 U.S. 923, *reh'g denied,* 429 U.S. 874 (1976) (statute applies to successive murders by strangulation, in separate rooms of a home, to eliminate witnesses to the initial killing); State v. Glass, 455 So.2d 659, 669 (La. 1984), *cert. denied,* 105 S.Ct. 2159, *reh'g denied,* 105 S.Ct. 3516 (1985) (statute applies to the shooting of two burglary victims after commission of the burglary, as part of a "single and consecutive course of conduct"); Dutton v. State, 674 P.2d 1134, 1141 (Okla.Ct.-Crim.App. 1984) (statute covers the shooting of a robbery victim and his mother, plus confession of participation in still another killing). Thus, there was no error.[3]

Finally, the court did not err in the manner in which it instructed the jury. Hogan requested an instruction that there is no reputable evidence that capital punishment acts as a general deterrent. His request was not warranted under any authority of which we are aware. The court likewise did not err in instructing the jury not to base its penalty decision on sympathy, since the jury was also instructed to consider any mitigating circumstances. Nevius v. State, 101 Nev. 238, 699 P.2d 1053 (1985).[4] Moreover, such an instruction is not without benefit to a defendant since it precludes a jury from selecting a penalty provoked by sympathy for victims or their survivors.

We have considered other cases in which the death penalty was imposed, and we conclude that Hogan's sentence is neither excessive nor disproportionate,[5] considering both the crime and the

---

[2]Hogan shot the daughter three times just after her mother had urged her to flee; the final two shots came when she attempted to use the telephone.

[3]Hogan's claim that the statute is unconstitutionally vague is meritless. Proffit v. Florida, 428 U.S. 242, 255-56, *reh'g denied,* 429 U.S. 875 (1976); Gregg v. Georgia, 428 U.S. 153, 202, *reh'g denied,* 429 U.S. 875 (1976). His claim that the State gave no adequate advance notice of the specific conduct at issue reads into the law a nonexistent requirement; proof at trial of the facts constituting the aggravating circumstance suffices. Deutscher v. State, 95 Nev. 669, 678, 601 P.2d 407, 413 (1979).

[4]The instruction regarding mitigating circumstances was skeletal, but only because Hogan had first requested deletion of inapplicable statutory circumstances, then proposed in their place a properly objectionable list of nonstatutory circumstances; that list contained assertions of facts not in evidence, general statements of penal theory, and mere negations of inapplicable statutory aggravating circumstances.

[5]NRS 177.055(2)(d) was recently amended to abolish the proportionality review requirement. This amendment became effective June 6, 1985. 1985 Stats. ch. 527 § 1, at 1597-98. The prohibition against ex post facto laws requires that we apply the law as it existed when the crime was committed. *See* Goldsworthy v. Hannifin, 86 Nev. 252, 468 P.2d 350 (1970) (an act

defendant. This was a premeditated murder with no clear motive, followed by a brutal attempt to kill the only apparent witness to the crime. This is the second time Hogan has killed a woman with whom he was involved, and we are cognizant of the fact that Hogan's repeated shooting of Ms. Hinkley's daughter ended with a shot to the head of a helpless girl after a pause for observation. The death penalty has been applied in less egregious cases. *See, e.g.,* Wilson v. State, 101 Nev. 452, 705 P.2d 151 (1985); Farmer v. State, 101 Nev. 419, 705 P.2d 149 (1985); Nevius v. State, *supra;* Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985). There is also no evidence that passion, prejudice or any other arbitrary factor influenced the choice of penalty. Accordingly, Hogan's conviction and sentence are affirmed.

---

amending parole eligibility could not be applied to the detriment of a defendant whose crime was committed before the amendment took effect). Because the murder occurred well before June 6, 1985, we must conduct a proportionality review of Hogan's sentence.