# IN THE SUPREME COURT OF THE STATE OF NEVADA

LARRY EDWARD ADAMS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 60606

**FILED**

JAN 2 2 2016



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal from an order denying a postconviction petition for a writ of habeas corpus in a death penalty case. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

Appellant Larry Edward Adams shot to death his wife, Pamela Adams, and his three-year-old daughter, Laura Adams, in the family home. A jury convicted him of two counts of first-degree murder and burglary and sentenced him to death for each murder. This court affirmed the convictions and sentence. *Adams v. State*, Docket No. 17966 (Order Dismissing Appeal, April 28, 1988).

This appeal involves the denial of Adams' third postconviction petition for a writ of habeas corpus. Because Adams filed the petition approximately 20 years after remittitur issued in his direct appeal and he had previously filed two other postconviction petitions, the petition was untimely under NRS 34.726(1) and successive pursuant to NRS 34.810(2). The petition therefore was procedurally barred absent a demonstration of good cause and prejudice. *See* NRS 34.726(1); NRS 34.810(3). When a petitioner cannot demonstrate good cause, the district court may nevertheless excuse a procedural bar if the petitioner demonstrates that

16-02311

failing to consider the petition would result in a fundamental miscarriage of justice. *Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001). A fundamental miscarriage of justice requires "a colorable showing" that the petitioner is "actually innocent of the crime or is ineligible for the death penalty." *Id.* Where the claim of a fundamental miscarriage is based on ineligibility for the death penalty, the petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him death eligible."[1] *Id.*

Adams challenges the district court's decision on two grounds: (1) the State's withholding of impeachment evidence concerning a key witness violated *Brady v. Maryland*, 373 U.S. 83 (1963) and establishes good cause and prejudice to excuse his procedural defaults and (2) he is actually innocent of first-degree murder, burglary, and the death penalty.

*Brady claim*

Adams argues that the State withheld impeachment evidence concerning a key witness, Joe Left Hand Bull, in violation of *Brady* and therefore he established good cause for the delay in filing his claim that trial counsel were ineffective for failing to investigate his case. *See State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) (providing that to raise a *Brady* claim in an untimely or successive petition, "the petitioner has the burden of pleading and proving specific facts that demonstrate good cause and prejudice to overcome the procedural bars"). In particular, he asserts that the State withheld Bull's true identity and criminal history. We

---

[1]The State also pleaded laches pursuant to NRS 34.800(1), which permits the dismissal of a petition if delay in the filing of the petition prejudices the State.

conclude that Adams has provided sufficient support to warrant an evidentiary hearing. *See Nika v. State*, 124 Nev. 1272, 1300-01, 198 P.3d 839, 858 (2008) (observing that postconviction petitioner is entitled to an evidentiary hearing on his claims of good cause only if he "asserts specific factual allegations that are not belied or repelled by the record and that, if true, would entitle him to relief"). Therefore, we remand this matter to the district court to conduct an evidentiary hearing on Adams' claim that the State's withholding of impeachment evidence concerning Bull constituted good cause to overcome the procedural default rules and whether he raised this claim within a reasonable time after it became available. *See Bennett*, 119 Nev. at 599, 81 P.3d at 8 ("Good cause and prejudice parallel the second and third *Brady* components; in other words, proving that the State withheld the evidence generally establishes cause, and proving that the withheld evidence was material establishes prejudice").

*Actual innocence*

Adams argues that he is actually innocent of first-degree murder because the premeditated murder instruction given at trial was erroneous and constitutionally vague and that his burglary conviction must be vacated in light our recent decision in *White v. State*, 130 Nev. Adv. Op. 56, 330 P.3d 482 (2014). He further argues that he is actually innocent of the death penalty because all of the aggravating circumstances found are invalid.

*First-degree murder*

Adams argues that he is actually innocent of first-degree murder because the premeditation instruction given, an instruction substantially similar to that commonly referred to as the *Kazalyn*[2] instruction, was erroneous and unconstitutionally vague as it "failed to meaningfully define the statutory elements of first-degree murder in a way that distinguishe[d] between first- and second-degree murder." He contends that the trial court's use of the *Kazalyn* instruction was wrong because this court's decision in *Hern v. State* was the rule at the time of his trial. 97 Nev. 529, 532, 635 P.2d 278, 280 (1981). In this, he relies on this court's observation in *Hern* that "[i]t is clear from the statutes that all three elements, willfulness, deliberation, and premeditation, must be proven beyond a reasonable doubt before an accused can be convicted of first degree murder." *Id.*

The flaw in Adams' argument is that even assuming the *Kazalyn* instruction failed to meaningfully define the elements for first-degree murder,[3] that deficiency would not establish that he is actually innocent of first-degree murder, which requires a showing that he is

---

[2]*Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992).

[3]We also do not agree with the underlying premise of his argument. *See Nika*, 124 Nev. at 1280-87, 198 P.3d at 845-48 (discussing history of Nevada law on the phrase "willful, deliberate, and premeditated," including *Hern*, and explaining that prior to *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000), this court had not required separate definitions of the terms and had instead viewed them as together conveying a meaning that was sufficiently described by the definition of "premeditation" eventually approved in *Kazalyn* and *Powell v. State*, 108 Nev. 700, 838 P.2d 921 (1992)).

*factually* innocent. *See Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006) (observing that "[a]ctual innocence means factual innocence, not mere legal insufficiency" (internal quotation marks omitted)). The evidence at trial showed that Pam was shot in the bedroom and then fled to the living room where she died. The evidence suggested that Laura either witnessed Pam's shooting or happened upon her body and Adams shot her in the head to eliminate her as a witness. That evidence overwhelmingly proves that Adams acted willfully and with premeditation and deliberation when he killed Pam and Laura. *See* NRS 200.030(1)(a). Because Adams failed to demonstrate that any error in the premeditation instruction rendered him factually innocent of first-degree murder, the district court did not err by denying his claim that he is actually innocent of first-degree murder.

*Burglary*

Adams contends that his burglary conviction must be vacated in light of our decision in *White* in which we held that "a person with an absolute right to enter a structure cannot commit burglary of that structure." 330 P.3d at 485-86. We have observed that a gateway actual-innocence claim contemplates the discovery of new evidence showing that the petitioner is factually innocent of the crime. *Brown v. McDaniel*, 130 Nev., Adv. Op. 60, 331 P.3d 867, 875 (2014); *see Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Here, Adams has not presented new evidence that he is actually innocent of burglary; rather, his claim is based on the sufficiency of the evidence presented at trial. *See Brown*, 331 P.3d at 875 (rejecting actual-innocence claim that "relie[d] on [defendant's] legal claims that there was insufficient evidence of first-degree murder presented at trial and that

Supreme Court
OF
Nevada

(O) 1947A

5

trial counsel provided ineffective assistance at trial"); *see also Thompson*, 523 U.S. at 559 ("'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." (quoting *Schlup*, 513 U.S. at 324)). Because Adams' contention does not satisfy the narrow actual-innocence exception to the procedural bars, no relief is warranted on this claim.

*Death penalty*

Adams argues that he is actually innocent of the death penalty because all of the aggravating circumstances found are invalid. The jury found three circumstances aggravated Pamela's murder: (1) the murderer knowingly created a great risk of death to more than one person, (2) the murder was committed during the commission of a robbery, and (3) the murder was committed during the commission of a burglary. The jury found the same three aggravating circumstances for Laura's murder plus an additional aggravating circumstance: the murder was committed to prevent or avoid a lawful arrest. Although the Supreme Court has opined that the actual innocence exception requires a petitioner to present new evidence demonstrating his innocence, *see House v. Bell*, 547 U.S. 518, 536-37 (2006); *Schlup*, 513 U.S. at 316, and the actual innocence exception is grounded in factual rather than legal innocence, *see Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *Mazzan v. Warden*, 112 Nev. 838, 842, 921 P.2d 920, 922 (1996), this court has allowed a broader approach when considering a gateway claim that the petitioner is actually innocent of the death penalty because aggravating circumstances are invalid, effectively extending the actual innocence gateway in that context to include legal innocence, *see,*

*e.g., Bennett,* 119 Nev. at 597-98, 81 P.3d at 7; *Leslie v. Warden,* 118 Nev. 773, 779-80, 59 P.3d 440, 445 (2002).

*Preventing-a-lawful-arrest aggravating circumstance*

Adams challenges the preventing-a-lawful-arrest aggravating circumstance on two grounds, both of which lack merit. First, he argues that insufficient evidence supports the aggravating circumstance because the evidence does not prove that he killed Laura with the intent to prevent or avoid a lawful arrest. On direct appeal, this court concluded that Fitzgerald's testimony that Adams shot Laura because she woke up, coupled with medical evidence suggesting that Laura was awake when Adams shot her at close range was sufficient to satisfy the aggravating circumstance. *Adams v. State,* Docket No. 17966 (Order Dismissing Appeal, April 28, 1988) at 5. This court's ruling constitutes the law of the case, *Hall v. State,* 91 Nev. 314, 316, 535 P.2d 797, 799 (1975), and Adams provides no compelling reason to reconsider that decision. *See Hsu v. County of Clark,* 123 Nev. 625, 629-30, 173 P.3d 724, 728-29 (2007); *Pellegrini v. State,* 117 Nev. 860, 884-85, 34 P.3d 519, 535-36 (2001). Second, he contends that the aggravating circumstance must be struck because it is unconstitutionally vague and overbroad as applied to him. In this, he argues that the aggravating circumstance should be based on evidence that the killing was accomplished with the intent to avoid or prevent an imminent arrest. We have consistently refused to interpret NRS 200.033(5) to require an imminent arrest. *See, e.g., Blake v. State,* 121 Nev. 779, 793-94, 121 P.3d 567, 576-77 (2005); *Evans v. State,* 112 Nev. 1172, 1196, 926 P.2d 265, 280 (1996); *Cavanaugh v. State,* 102 Nev. 478, 486, 729 P.2d 481, 486 (1986).

*Great-risk-of-death aggravating circumstance*

Adams argues that the great-risk-of-death aggravating circumstance must be struck for four reasons. First, he asserts that insufficient evidence was introduced to support the aggravating circumstance because the State failed to prove that he knew that other children were asleep in the house and that because the shootings occurred serially, only one person at a time was endangered. On direct appeal, we concluded that the proximity of Pam and Laura to each other when they were shot and the presence of three other children sleeping in the adjoining bedrooms, was sufficient to prove the aggravating circumstance. *Adams*, Docket No. 17966 (Order Dismissing Appeal, April 28, 1988) at 5. Our ruling constitutes the law of the case, *Hall*, 91 Nev. at 316, 535 P.2d at 799, and Adams articulates no compelling reason to revisit that decision. *See Hsu*, 123 Nev. at 629-30, 173 P.3d at 728-29. Second, Adams argues that the aggravating circumstance was intended to apply only to situations such as a bombing, shooting into a crowd, or driving a vehicle onto a crowded sidewalk. We have upheld this aggravating circumstance under substantially similar facts to those here. *E.g., Flanagan v. State*, 112 Nev. 1409, 1420-21, 930 P.2d 691, 698-99 (1996); *Evans*, 112 Nev. at 1195-96, 926 P.2d at 280; *Hogan v. State*, 103 Nev. 21, 23-24, 732 P.2d 422, 424 (1987). Third, Adams argues that our decisions upholding the aggravating circumstance where there are multiple murders or cases involving a second victim shot while standing near the murder victim are inconsistent. We disagree. He points to this court's decisions in *Leslie v. State*, 114 Nev. 8, 952 P.2d 966 (1998) and *Jimenez v. State*, 105 Nev. 337, 775 P.2d 694 (1989), but those cases are factually distinguishable from cases where the court has upheld the aggravating circumstance, such as

*Lisle v. State*, 113 Nev. 540, 555-56, 937 P.2d 473, 482-83 (1997); *Flanagan*, 112 Nev. at 1420-21, 930 P.2d at 698-99; *Evans*, 112 Nev. at 1195, 926 P.2d at 280; and *Hogan*, 103 Nev. at 23-24, 732 P.2d at 424. Fourth, Adams complains that the aggravating circumstance is unconstitutional because it does not rationally narrow the class of death eligible defendants. We have repeatedly rejected that argument and do so here. *E.g., Blake*, 121 Nev. at 793-94, 121 P.3d at 576-77; *Evans*, 112 Nev. at 1196, 926 P.2d at 280; *Cavanaugh*, 102 Nev. at 486, 729 P.2d at 486.

### Felony aggravating circumstances

Adams argues that the felony aggravating circumstances based on burglary must be struck because he could not burglarize his own home, as he had a possessory interest in the home and that the felony aggravating circumstance based on robbery must be struck because it was based upon the theft of property (money and drugs) belonging to him.[4] Even accepting Adams' contentions, two aggravating circumstances remain for Laura's murder—Adams knowingly created a great risk of death to more than one person and the murder was committed to prevent or avoid a lawful arrest—and one remains for Pam's murder—Adams

---

[4]Adams argues that the felony aggravating circumstances based on burglary and robbery are also invalid under *McConnell v. State*, 120 Nev. 1043, 1069, 102 P.3d 606, 624 (2004), because the State relied on those felonies to prove first-degree murder. However, the record shows that the State did not pursue a first-degree-murder theory based on felony murder; therefore, *McConnell* does not invalidate those aggravating circumstances. We reject Adams' suggestion that the State's closing argument showed that the State relied on a felony-murder theory, where the information does not include felony murder as a theory of first-degree murder and he conceded in his post-conviction petition that the State did not seek an instruction on felony murder.

knowingly created a great risk of death to more than one person. Because valid aggravating circumstances remain, he is not actually innocent of the death penalty. *See Lisle v. State*, 131 Nev., Adv. Op 39, 351 P.3d 725 (2015) (observing that only aggravating circumstances are relevant to a gateway claim that the defendant is actually innocent of the death penalty). Therefore, the district court did not err by rejecting this claim.[5]

Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Parraguirre

_____, J.          _____, J.
Hardesty                              Douglas

_____, J.          _____, J.
Cherry                                Saitta

_____, J.          _____, J.
Gibbons                               Pickering

---

[5]To the extent Adams argues that his *Brady* claim, the premeditation instruction, the unreliability of reweighing, and the popular election of the Nevada judiciary are relevant to determining prejudice as a result of any invalid aggravating circumstance, his contention lacks merit because prejudice plays no role in resolving his actual innocence claim.

cc:    Hon. Valorie J. Vega, District Judge
       Federal Public Defender/Las Vegas
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk