**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL RAY HOGAN, | No.18-99004 |
| *Petitioner-Appellant*, | D.C. No. 2:97-cv-00927-JCM-PAL |
| v. | |
| JEREMY BEAN; ATTORNEY GENERAL FOR THE STATE OF NEVADA, | ORDER |
| *Respondents-Appellees*. | |

Filed April 30, 2026

Before: Marsha S. Berzon, Jay S. Bybee, and Consuelo M. Callahan, Circuit Judges.

Order;
Statement by Judges Berzon and Bybee;
Dissent by Judge Bress

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel denied a petition for panel rehearing and rehearing en banc in a case in which the panel affirmed in part and reversed in part the district court's denial of death row inmate Michael Hogan's petition for a writ of habeas corpus.

In a statement respecting the denial of rehearing en banc, Judges Berzon and Bybee wrote to make two main points. First, the panel majority correctly applied the narrow exception in *Martinez v. Ryan*, 566 U.S. 1 (2012)—that attorney error in the "initial-review collateral proceeding" can establish cause for excusing a procedural default—to an exceedingly unusual record in which the failure of Hogan's first state postconviction counsel to raise the relevant ineffective assistance of trial counsel claims precluded future counsel from properly raising them in any future petition. Second, the dissenting judges have overstated the consequences of the decision in this pre-AEDPA case.

Judge Bress, joined by Judges Callahan, Bennett, R. Nelson, Collins, Lee, Bumatay, VanDyke and Tung, dissented from the denial of hearing en banc. Judge Bress wrote that the panel's divided decision—that a federal habeas petitioner could invoke *Martinez* to revive more than ten defaulted claims of ineffective assistance of trial counsel that he failed to raise until his third and fourth state court postconviction relief petitions filed seventeen and twenty-

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

one years after his conviction became final—improperly expands a limited equitable exception to procedural default, contravening Supreme Court precedent and requiring district courts to engage in complex proceedings over stale, defaulted habeas claims. Judge Bress wrote that this uniquely problematic decision will impose significant systemic costs on the federal courts at a great affront to the principles of federalism that the doctrine of procedural default is meant to respect.

**ORDER**

Judge Berzon and Judge Bybee voted to deny the petition for rehearing and recommend denying the petition for rehearing en banc. Judge Callahan voted to grant the petition for rehearing and the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc. A judge of the court requested a vote on en banc rehearing. The matter failed to receive a majority of votes of non-recused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for panel rehearing and rehearing en banc, Dkt. 99, is DENIED.

BERZON and BYBEE, Senior Circuit Judges, statement respecting the denial of rehearing en banc:

With great respect to our dissenting colleagues, rehearing en banc was not warranted in this case. We write

to make two points.  First, the panel majority correctly applied *Martinez*'s narrow exception to an exceedingly unusual record. Second, our dissenting colleagues have overstated the consequences of our decision in this pre-AEDPA case.

Our dissenting colleagues argue that the *Martinez* exception is available only to petitioners who raise an ineffective assistance of trial counsel (trial IAC) claim in their second state postconviction relief (PCR) petition after failing to raise it in their first petition.  Dissenting Op. at 14–15.  But *Martinez* imposes no requirement that the relevant claims be raised in a second PCR.  In fact, there is no requirement in *Martinez* that a second PCR be filed at all; this court has previously applied *Martinez* in cases in which only a single PCR was filed.  *See, e.g.*, *Woods v. Sinclair*, 764 F.3d 1109 (9th Cir. 2014); *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (abrogated on other grounds).  *Martinez* holds that attorney error in the "initial-review collateral proceeding" can establish cause for excusing a procedural default.  *Martinez v. Ryan*, 566 U.S. 1, 13, (2012).  It repeatedly frames its holding as turning on the conditions of that proceeding, which marks the first time a petitioner could have raised a trial IAC claim.  *See id.* at 4, 8, 9, 10, 11, 13, 14, 16, 17, 18.  And that is the precise circumstance of this case: the failure of Hogan's first state postconviction counsel to raise the relevant trial IAC claims precluded future counsel from properly raising them in any future petition. Because of Nevada's bar on successive petitions, the Nevada Supreme Court could not have addressed the merits of those claims in subsequent proceedings.

We see no need to restate the labyrinthine procedural history of this case.  *See Hogan v. Bean*, 140 F.4th 1001, 1010–1015 (9th Cir. 2025).  What matters here is that the

Nevada Supreme Court attributed Hogan's procedural defaults to alleged errors made in his initial-review collateral proceeding. Under *Martinez*, we were thus required to give Hogan an opportunity to demonstrate cause and prejudice.

## I

The procedural default doctrine bars federal habeas relief "when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (citation omitted). A petitioner may overcome procedural default by "demonstrat[ing] 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (citation omitted).

Although ineffective assistance of trial counsel can constitute cause to overcome a procedural default, *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991), ineffective assistance in *state postconviction proceedings* ordinarily does not qualify as cause because the Sixth Amendment does not provide a constitutional right to counsel in such proceedings. *See Davila v. Davis*, 582 U.S. 521, 524 (2017). The Supreme Court, however, established a limited exception to this rule in *Martinez*, holding that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. To qualify as an initial-review collateral proceeding, the proceeding must be "the first designated proceeding for a prisoner to raise the ineffective-assistance claim." *Id.* at 11.

As Judge Callahan stated in her partial dissent, *Martinez* thus *"*provides a narrow exception for claims of trial counsel IAC that were not raised in the 'initial-review collateral proceedings' because of ineffective assistance of appellate counsel in that proceeding." *Hogan*, 140 F.4th at 1060 (Callahan, J., concurring in part and dissenting in part).

This case falls within that exception. Hogan has consistently alleged that error by his *first* postconviction counsel—not his second—served as cause for his procedural defaults. Because Nevada has a bar on successive petitions that requires dismissal if the grounds for the petition could have been raised in "a prior petition for a writ of habeas corpus or postconviction relief," Nev. Rev. Stat. § 34.810(1), the failure of Hogan's first PCR counsel to raise the relevant IAC claims barred all subsequent counsel from doing so in Nevada courts. A petitioner can only overcome this procedural bar by showing cause for the default and actual prejudice due to it. *Id.* But unlike the federal procedural default doctrine, Nevada squarely forecloses the *Martinez* exception in cases, as here, in which the petitioner had no statutory right to counsel. *See Brown v. McDaniel*, 331 P.3d 867, 875 (Nev. 2014).[1] As a

---

[1] Although our colleagues claim otherwise, there is no open question as to whether Nevada's successive petition rule would have barred Hogan's IAC claims had they been raised in his second petition. *See* Dissenting Op. at 25. The answer is a clear yes. In *Brown*, the Nevada Supreme Court expressly "decline[d] to extend [the *Martinez* rule] to state post-conviction proceedings." 331 P.3d at 874. Without the *Martinez* exception, the prisoner in that case could not "demonstrate good cause and prejudice to overcome the procedural bars," thereby leaving his petition "barred as untimely and successive." *Id.* at 875. The dissent has not identified another avenue that might have allowed Hogan to properly raise the relevant trial IAC claims in his second state postconviction petition. Although the Nevada Supreme Court now recognizes a

result, Hogan's second counsel could not have argued that ineffective assistance by his first counsel amounted to "cause" for failing to present the grounds for the petition at the first opportunity—leaving Hogan's IAC claims barred by virtue of his first counsel's errors.

Moreover, the Nevada Supreme Court itself repeatedly based its finding of procedural default on errors in Hogan's *first* petition.  In finding that Hogan's third state postconviction petition was successive, the Nevada Supreme Court referred only to Hogan's "first petition for a writ of habeas corpus."  Order of Affirmance, *Hogan v. State*, 178 P.3d 764 (Table), No. 46293, 2006 WL 5440420, at *2 (Nev. Nov. 15, 2006) (*Hogan V*).  And in denying Hogan's fourth state postconviction petition, the Nevada Supreme Court found that the petition "was successive pursuant to NRS 34.810(2)" without specifying which preceding petition was the source of the procedural default.  Order of Affirmance, *Hogan v. State*, No. 54011, 2012 WL 204641, at *2 (Nev. Jan. 20, 2012) (*Hogan VI*).  Hogan's opening brief to the Nevada Supreme Court, however, argued that "ineffective assistance of post-conviction counsel was sufficient good cause to overcome any procedural bar regarding any factual allegations or claims which were not raised in his *initial state post-conviction habeas petition*."  Appellant's Opening Br., *Hogan, v. McDaniel*, 128 Nev. 903 (2012), 2010 WL 10959510, at *82 (emphasis added).  As the Nevada Supreme Court was on notice that Hogan's good cause claims concerned his initial state postconviction petition, we

_____

*Martinez*-like exception for capital habeas petitioners who possessed a statutory right to counsel for their first PCR, s*ee Rippo v. State*, 423 P.3d 1084, 1093 (Nev. 2018); *Crump v. Warden*, 934 P.2d 247, 252–53 (Nev. 1997), *Brown* controls here because Nevada did not recognize a statutory right to counsel at the time Hogan filed his first PCR.

can fairly presume that the court based its denial on the actions of his first postconviction counsel, not his second. We decline to replace the state court's reasoning with our own to manufacture the illusion that the second postconviction counsel was the source of the procedural default.

Our colleagues claim that "the issue is not whether the state court would have rejected a second PCR petition as second or successive" and instead insist that "the key point is that 'a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address the *merits* of those claims in the first instance.'" Dissenting Op. at 25–26 (quoting *Davila*, 582 U.S. at 527) (quotation marks and citation omitted) (emphasis added). They assert that "[p]etitioners like Hogan who fail to give the state courts that opportunity should not be rewarded." *Id.* (quoting *Hogan*, 140 F.4th at 1058 (Callahan, J., concurring in part and dissenting in part)).

But Hogan did not "deprive the state courts of an opportunity to address the merits of [his] claims" because, as the dissent recognizes, Nevada "does not permit further merits review" when claims raised in a second PCR petition were not raised in the first. *Id.* Including procedurally barred claims in a second PCR petition would have been an empty exercise. Any opportunity for the state courts to address Hogan's claims on the merits was foreclosed by the alleged attorney errors in Hogan's initial review collateral proceeding. And the central reasoning of *Martinez* is that those attorney errors on the first opportunity to raise trial IAC claims should not be construed as the petitioner's willful avoidance of merits review by the state courts. Considering that it is the unavoidable nature of procedural

default that the petitioner has deprived the state courts of an opportunity to address the merits of those claims by failing to comply with a state procedural rule, Hogan has provided a legitimate excuse for the deprivation by pointing to errors made by his first counsel.

The dissent's objection is fundamentally a demand for exhaustion. But it is well established that "if a claim is unexhausted but state procedural rules would now bar consideration of the claim, it *is* technically exhausted." *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011) (emphasis added); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (citation modified) (explaining that although habeas corpus relief may not be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State[,] [b]ecause this requirement refers only to remedies still available at the time of the federal petition, it is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law"); *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."); *Castille v. Peoples*, 489 U.S. 346, 351 (1989) ("The requisite exhaustion . . . [exists] if it is clear that respondent's claims are now procedurally barred under [state] law."); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989) (holding that where petitioner did not raise a claim at trial or on direct appeal, and state procedural rules barred him from raising it state collateral proceedings, the exhaustion requirement was met).

Our position adheres to the reasoning in *Martinez*, which rests on the logic that attorney errors in initial-review collateral proceedings make it likely that "no state court at any level will hear the prisoner's claim." 566 U.S. at 10.

Because the Nevada Supreme Court attributed its inability to hear Hogan's claims on the merits to alleged errors by his first counsel, this case falls within the limited parameters of the *Martinez* exception.  Regardless of his second counsel's actions, Hogan's IAC claims were barred *from the moment* that his first postconviction counsel failed to raise the claims. Notwithstanding any later ineffectiveness, the first counsel's allegedly deficient performance in the initial-review collateral proceeding constituted the operative "cause" for the procedural defaults.  Although *Martinez* presents different facts, nowhere does that opinion state that the exception is extinguished by a second counsel's failure to raise IAC claims that would have been barred regardless by the first counsel's error.

In sum, our colleagues mischaracterize the panel's decision in claiming that it "is at odds with *Martinez*'s caveat that its 'holding[] does not concern attorney errors in . . . second or successive collateral proceedings.'"  Dissenting Op. at 26–27 (quoting *Martinez*, 566 U.S. at 16).  As discussed above, any attorney errors or actions in Hogan's second or successive collateral proceedings have no bearing on whether *Martinez* applies to excuse errors attributable to his initial PCR counsel.  Because our decision rests on alleged attorney error in the initial-review collateral proceeding, not error in the second or successive collateral proceeding, it remains properly within the bounds of *Martinez.*

## II

Our colleagues also overstate the implications of the panel decision for future cases.  This case reaches an unusual result only because it arrives on an exceedingly unusual record:  Hogan was able to raise new trial IAC claims for the

first time in his third and fourth federal habeas petitions decades later only because the district court allowed serial amendments and stays over the course of many decades, all of which the state of Nevada acquiesced to. *See Hogan*, 140 F.4th at 1030–31 (discussing the "procedural perplexities" and "unique procedural history" of this case). This delay was only possible under the more forgiving pre-AEDPA standards that govern this case and would almost certainly be foreclosed under AEDPA. *See id.* at 1031 nn. 11–12 (noting that "the practices we find puzzling in this case would likely not be permitted under AEDPA"). Although Hogan's federal habeas petition was filed in 1989, this is the first time the case has come to us in any form.

The abnormally long gap between Hogan's initial federal habeas petition in 1989 and the addition of the final two new trial IAC claims in 2012 was the result of the district court allowing serial amendments decades apart and staying the case while those futile claims slowly made their way through state court. Each stay, and corresponding percolation through the state court system, postponed federal resolution by approximately seven, five, and four years, respectively. These stays were both unusual and likely erroneous, as there was no serious prospect that Nevada courts would consider Hogan's newly raised trial IAC claims on the merits, rendering his state claims exhausted. *See Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (noting that a state habeas petitioner has not exhausted state remedies if there is an "opportunity to obtain redress in state court"). The record shows that Nevada stipulated to the third stay in 2003 and agreed to the fourth stay in 2008. If the state of Nevada had desired an expeditious federal review of the claims, it could have objected to the stays or even waived the requirement of exhausting state remedies. 28 U.S.C. § 2254(c). But a state

may not evade federal review of constitutionally guaranteed rights by encouraging delay such that the remedy becomes too impractical or burdensome to apply.  Comity goes both ways.

Furthermore, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") now cabins many of the features that made Hogan's decades-long delay possible. For one, the district court's repeated grants of a stay would not be permissible under the post-AEDPA governing standard of *Rhines v. Weber*, 544 U.S. 269 (2005).  There, the Supreme Court held that only in narrow circumstances may a district court hold a habeas petition in abeyance to allow a petitioner to present unexhausted claims to the state court without running down AEDPA's 1-year statute of limitations. *Id.* at 275–77.  This kind of stay-and-abeyance is appropriate only if a petitioner "had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id.* at 278.  *Rhines* further instructs district courts to "place reasonable time limits on a petitioner's trip to state court and back."  *Id.*

AEDPA also imposes a one-year limitation on filing federal habeas petitions.  *See* 28 U.S.C. § 2244(d)(1)(A). The limitations period begins to run once the judgment becomes final at the conclusion of direct review and is only tolled pending state postconviction or collateral proceedings, *id.* at § 2244(d)(2), but not during the pendency of a federal habeas petition, *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).  On top of this time constraint, AEDPA generally prohibits claims raised for the first time in second or successive petitions unless they rely on a new, retroactive rule of constitutional law, or on previously undiscoverable facts establishing prejudicial error.  *See* 28 U.S.C.

§ 2244(b)(2). Thus, absent leave to amend, a defendant ordinarily cannot raise new trial IAC claims decades after filing a first federal habeas petition. And under AEDPA's stricter relation-back regime, any amendments filed after the 1-year statute of limitations has run must be "tied to a common core of operative facts," and not differ in "time and type" or merely arise out of the same "trial, conviction, or sentence." *Mayle v. Felix*, 545 U.S. 644, 646–47 (2005).

Whatever qualms the dissenters take with how we have interpreted post-AEDPA restraints and caselaw—and these are assuredly important questions—they do not bear on the panel's application of *Martinez*'s narrow exception to this pre-AEDPA case. Because the panel opinion did no more than faithfully apply the law to the case at hand, we concur in the denial of rehearing en banc.

---

BRESS, Circuit Judge, with whom CALLAHAN, BENNETT, R. NELSON, COLLINS, LEE, BUMATAY, VANDYKE, and TUNG, Circuit Judges, join, dissenting from the denial of rehearing en banc:

The panel's divided decision in this case improperly expands a limited equitable exception to procedural default, contravening Supreme Court precedent and requiring district courts to engage in complex proceedings over stale, defaulted habeas claims. *See Hogan v. Bean*, 140 F.4th 1001 (9th Cir. 2025). This uniquely problematic decision will impose significant systemic costs on the federal courts at a great affront to the principles of federalism that the doctrine of procedural default is meant to respect.

Attorney negligence usually cannot serve as cause for procedurally defaulting a claim in state postconviction

proceedings. In *Martinez v. Ryan*, 566 U.S. 1 (2012), however, the Supreme Court held that state postconviction counsel's failure to raise ineffective assistance of trial counsel (trial IAC) claims in a state "initial-review collateral proceeding" can serve as "cause" to excuse the default, when collateral review is the petitioner's first opportunity under state procedure to present trial IAC claims. *Id.* at 14, 17. But "*Martinez* was unusually explicit about the narrowness of [its] decision," *Shinn v. Ramirez*, 596 U.S. 366, 387 (2022) (quotations omitted), and the Supreme Court has vigorously rejected requests to expand it. As the Supreme Court later put it, "*Martinez* foreclosed any extension of its holding beyond the narrow exception to procedural default at issue in that case." *Id.* (quotations omitted). *Martinez* therefore "provides no support for extending its narrow exception to new categories of procedurally defaulted claims." *Davila v. Davis*, 582 U.S. 521, 529–30 (2017).

Yet the panel decision did just that. In a capital case whose events date back more than fifty years, the panel held that a federal habeas petitioner could invoke *Martinez* to revive more than ten defaulted claims of trial IAC that he failed to raise until his third and fourth state court postconviction relief (PCR) petitions—filed seventeen and twenty-one years after his conviction became final. *Hogan*, 140 F.4th at 1010, 1012, 1014, 1028–30. The panel's decision disregards the logic of *Martinez* and the Supreme Court's strict guidance about its limits.

As Judge Callahan explained in dissent, the *Martinez* exception is limited to petitioners who fail to raise trial IAC in their first state PCR petition, but who raise it in their *second* state petition. *Id.* at 1056–57 (Callahan, J., dissenting). When a petitioner again fails to raise trial IAC in a second PCR petition and the petitioner then, as here,

tries to raise new trial IAC claims in third and further petitions, *Martinez* does not apply.  At that point, "the 'cause' for petitioner's failure to adequately raise the claims is no longer the ineffectiveness of counsel in the first PCR petition, but attorney error in the second and subsequent state post-conviction petitions, which does not excuse the procedural default" under *Martinez*.  *Id.* at 1059 (Callahan, J., dissenting).  *Martinez* created an equitable exception to procedural default, 566 U.S. at 16, but there is nothing equitable about allowing a petitioner who fails to raise trial IAC in an initial state PCR petition, and who then fails to raise it in a second PCR petition, to be able to raise trial IAC in any future PCR petition—no matter how successive it is or how many years off it is filed.  The panel vastly and improperly expanded "cause" under *Martinez*.

The results will likely be dramatic.  "*Martinez* grounded its decision in part on the belief that its narrow exception was unlikely to impose significant systemic costs."  *Davila*, 582 U.S. at 535.  But the panel decision will impose major costs. In this matter alone, and in the context of a capital case that was tried in state court *in 1985*, the panel sends fourteen new trial IAC claims back to the district court for it to apply what the panel described as a "particularly complex set of rules" to determine whether the rest of the *Martinez* test is met. *Hogan*, 140 F.4th at 1032, 1046.  That same result will play out in habeas cases across our circuit.  Trial IAC claims that are raised in third or later state PCR petitions must now be accorded a full *Martinez* analysis (and potentially habeas relief), notwithstanding long-accepted state procedural rules disallowing such successive petitions—rules that have long served as adequate and independent grounds for procedural default in federal court.  If a petitioner returns to state court to raise new trial IAC claims, he now qualifies for "cause"

under *Martinez*, no matter his delay or how many times he failed to raise those claims in prior petitions.

The panel decision is contrary to the Supreme Court's treatment of the *Martinez* exception and will impose significant and unwarranted costs on federal courts. I respectfully dissent from the decision not to rehear this matter en banc.

I

The events giving rise to these proceedings date back more than five decades. In 1970, Michael Hogan choked his girlfriend, Savilla Kubicek, in a bar parking lot in Iowa before slamming her head into his car. *Hogan*, 140 F.4th at 1017–18. Witnesses later saw Kubicek fall from the passenger seat of Hogan's car onto the shoulder of the road as Hogan continued to drive. *Id.* Kubicek died from her injuries, and Hogan pleaded guilty to manslaughter in Iowa state court. *Id.*

In 1984, Hogan shot and killed his girlfriend, Heidi Hinkley, after an argument. *Id.* at 1011. Hogan then shot Hinkley's teenage daughter five times, including in the head, although she miraculously survived. *Id.* As the Nevada Supreme Court described it, "[t]his was a premeditated murder with no clear motive, followed by a brutal attempt to kill the only apparent witness to the crime." *Id.* at 1012 (quoting *Hogan v. State*, 732 P.2d 422, 425 (Nev. 1987) (per curiam)). Hogan was convicted of first-degree murder for killing Hinkley and of the attempted murder of Hinkley's daughter. *Id.* The jury, which was presented with Hogan's Iowa conviction as an aggravator, returned a sentence of death. *Id.* Hogan's conviction and sentence were affirmed by the Nevada Supreme Court on direct review, *id.*, and the

United States Supreme Court denied certiorari in October 1987.

Thus began the habeas odyssey that eventually led to this appeal. In November 1987, Hogan filed his first PCR petition in Nevada state court. *Hogan*, 140 F.4th at 1012. He was then appointed counsel, who filed a supplemental memorandum supporting the petition. *Id.* Hogan's petition was denied, with the Nevada Supreme Court concluding that Hogan received effective assistance of counsel at trial and on direct appeal. *Id.* at 1013.

In 1989, Hogan filed a federal habeas petition containing new, unexhausted claims. *Id.* The district court stayed proceedings so that Hogan could exhaust his new claims in Nevada state court. *Id.* Represented by new counsel, Hogan filed his second state PCR petition in November 1990. *Id.* The state court dismissed this second petition as successive under Nev. Rev. Stat. § 34.810, observing that Hogan failed to provide a legitimate excuse for not raising the new claims in his first petition and had not established actual innocence of the aggravating circumstances. *Id.* The Nevada Supreme Court affirmed. *Id*.

In 2001, Hogan filed a third amended federal habeas petition raising eleven new claims of trial IAC. *Id.* at 1014. The district court once again stayed Hogan's case to allow him to present these new claims in state court. *Id.* Hogan filed his third state PCR petition in February 2004, raising for the first time in state court some of the new trial IAC claims that are the subject of this case. *Id.* The Nevada Supreme Court affirmed the denial of relief, concluding that the petition was successive, Nev. Rev. Stat. § 34.810, and untimely, *id.* § 34.726. *Hogan*, 140 F.4th at 1014. The Nevada Supreme Court again concluded that Hogan had not

shown cause for his failure to raise his new claims in prior petitions and that Hogan had not shown actual innocence of the aggravating circumstances. *Id.*

Hogan requested another stay of the federal proceedings in 2008 so that he could file a fourth PCR petition in state court to raise even more new trial IAC claims. *Id.* The stay was granted, and Hogan filed his fourth PCR petition with the Nevada courts in September 2008. *Id.* That fourth state PCR petition was dismissed once more as successive and untimely in January 2012. *Id.*

The district court lifted its stay in May 2012, and in 2014 issued its order adjudicating the trial IAC claims at issue here. *Id.* at 1014–15. As to those claims, the court concluded that Nevada's procedural bar served as an adequate and independent ground for finding the claims defaulted. The court further concluded that *Martinez* did not apply because the "[i]neffective assistance of counsel in Hogan's first state habeas action does not function as cause for the procedural default of claims raised in Hogan's third and fourth state habeas actions." *Id.* at 1028.

The panel reversed and remanded to the district court for further proceedings. *Id.* at 1026–34. It held that the ineffectiveness of Hogan's state post-conviction counsel in his first 1987 state PCR petition could serve as "cause" under *Martinez* to excuse Hogan's failure to raise his trial IAC claims (Claims 2(A)–(G) and (I)–(O)) until his third and fourth state PCR petitions in 2004 and 2008. *Id.* at 1029, 1032. Because "*Martinez* relief may be available" to Hogan, the panel remanded for the district court to undertake the rest of the "particularly complex" *Martinez* analysis, which involved consideration of whether Hogan's first state PCR counsel was ineffective in failing to raise the relevant trial

IAC claims, and, if so, whether his trial counsel was constitutionally ineffective. *Id.* at 1032. If cause and prejudice were shown, the district court could then proceed to the merits of the defaulted trial IAC claims. *Id.* at 1034.

Judge Callahan dissented. She explained that the "cause" of Hogan's default by 2004 was "no longer the ineffectiveness of counsel in the first PCR petition, but attorney error in the second and subsequent state post-conviction petitions." *Id.* at 1059 (Callahan, J., dissenting). This fell outside *Martinez*, which "only excuses a procedural default based on the alleged IAC of post-conviction counsel in a defendant's *initial* state PCR proceeding." *Id.* at 1060. In view of the costs that the panel decision would impose, Judge Callahan wrote, the majority's expansion of *Martinez* was "the realization of the fears" expressed in Supreme Court precedent limiting *Martinez*. *Id.* In this case, that expansion permitted Hogan to "not rais[e] claims of trial IAC for decades" yet to succeed in requiring the district court to determine "in the first instance (because the merits have never been considered by the state courts) whether, in 1985, trial counsel was constitutionally ineffective." *Id.*

The State of Nevada petitioned for rehearing en banc.[1]

## II

## A

In undertaking federal review of state convictions, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent

---

[1] The panel disposed of various other issues and claims in its opinion. Like Judge Callahan, I do not take issue with those other rulings.

state procedural rule." *Davila*, 582 U.S. at 527. In these circumstances, "'a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address' the merits of 'those claims in the first instance.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). Enforcing the procedural default doctrine serves important interests of "comity, finality, and federalism." *Id.* at 528.

A federal habeas petitioner can avoid his default and enable federal court review of his claims by showing "'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Id.* (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). To show "cause," the federal habeas petitioner "must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Attorney error can lead habeas petitioners to procedurally default their claims. But "[i]t has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." *Id.* In the case of attorney errors that do not amount to constitutional violations, the error "is attributed to the prisoner under 'well-settled principles of agency law.'" *Id.* (quoting *Coleman*, 501 U.S. at 754). This means "that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default." *Id.* at 529.

That is the case for state postconviction proceedings. The Supreme Court in *Coleman v. Thompson* held that "attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel—cannot supply cause to excuse a procedural default that occurs in those proceedings." *Davila*, 582 U.S. at 529 (discussing *Coleman*) (citation omitted). That remains true even for "egregious attorney error" in state PCR proceedings, as the panel recognized. *Hogan*, 140 F.4th at 1026–27.

In *Martinez*, the Supreme Court recognized a "narrow," "equitable" exception to this rule. 566 U.S. at 9, 16. It held that if state law requires petitioners to raise trial IAC claims for the first time in state PCR proceedings, "ineffective assistance of state postconviction counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-assistance claim." *Shinn*, 596 U.S. at 380 (discussing *Martinez*). Further, to "overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14.

The Supreme Court in *Martinez* couched its decision as an exercise of "equitable" discretion and stated explicitly that it was not establishing a constitutional right to effective counsel in postconviction proceedings. *Id.* at 16. The Court also repeatedly asserted that this equitable pathway to relief from a procedural default is a narrow one. *See id.* at 9 ("This opinion qualifies *Coleman* by recognizing a narrow exception."); *id.* at 16 ("The rule of *Coleman* governs in all but the limited circumstances recognized here."). Considering the limited scope of the decision, the Court

emphasized that the *Martinez* exception would not "put a significant strain on state resources." *Id.* at 15.

Since *Martinez*, the Supreme Court has reiterated the decision's limited scope, rejecting requests to expand it. In *Davila*, the Court held that *Martinez* does not extend to a federal habeas petitioner's procedural default in state PCR proceedings of claims of ineffective assistance of appellate counsel. *Davila*, 582 U.S. at 525. As the Court explained, "[a]pplying *Martinez*'s highly circumscribed, equitable exception to new categories of procedurally defaulted claims would . . . do precisely what this Court disclaimed in *Martinez*: Replace the rule of *Coleman* with the exception of *Martinez*." *Id.* at 530. The Court also declined to extend the *Martinez* exception because it "could flood the federal courts with defaulted claims of appellate ineffectiveness," contrary to *Martinez*'s understanding that "its narrow exception was unlikely to impose significant systemic costs." *Id.* at 535. For each "additional claim," district courts would be required "to review the prisoner's trial record, appellate briefing, and state postconviction record to determine the claim's viability." *Id.* at 536. This expansion of *Martinez* would "impose significant costs on the federal courts" while "aggravat[ing] the harm to federalism that federal habeas review necessarily causes." *Id.* at 537.

In *Shinn v. Ramirez*, the Court again underscored the narrow nature of the *Martinez* exception. 596 U.S. at 387. It described how "*Martinez* was 'unusually explicit about the narrowness of our decision.'" *Id.* (quoting *Trevino v. Thaler*, 569 U.S. 413, 431 (2013) (Roberts, C.J., dissenting)). And it clarified that "*Martinez* foreclosed any extension of its holding beyond the 'narrow exception' to procedural default at issue in that case." *Id.* (quoting *Martinez*, 566 U.S. at 9).

B

Against this backdrop, the panel seriously erred in holding that Hogan's doubly and triply defaulted claims of trial IAC could be revived under *Martinez*.

Hogan could have invoked *Martinez* to potentially excuse his procedural default in his initial PCR proceedings had he raised his operative trial IAC claims in his second state PCR petition in 1990. The problem is that he did not raise those claims in his second petition, either. The procedural default in this case thus involved Hogan raising his claims only in his third and fourth PCR petitions, triggering Nevada's procedural bars for improperly successive and untimely petitions. Nev. Rev. Stat. §§ 34.810, 34.726.

But there is no sense in which the alleged ineffective assistance of counsel in Hogan's "initial-review collateral proceeding," *Martinez*, 566 U.S. at 17, can or should be regarded as a legally sufficient "cause" to excuse a procedural default occasioned by counsel's conduct in the *second* PCR proceeding. *See Hogan*, 140 F.4th at 1060 (Callahan, J., dissenting). As the panel explained, "cause" in the law of procedural default "refers to a legitimate excuse for the default." *Hogan*, 140 F.4th at 1029 (quotations omitted). The rationale of *Martinez* is that IAC of PCR counsel in the "initial-review collateral proceeding" should count as cause when it is the petitioner's first opportunity under state procedure to raise claims of trial IAC. 566 U.S. at 9; *see also Shinn*, 596 U.S. at 380. That rationale dissipates when the petitioner fails to raise the trial IAC claims in his second PCR petition. *See Hogan*, 140 F.4th at 1056–57 (Callahan, J., dissenting).

The majority's decision contradicts not just the logic of *Martinez*, but its express terms. *Martinez* explained that:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case *does not concern attorney errors in other kinds of proceedings*, including appeals from initial-review collateral proceedings, *second or successive collateral proceedings*, and petitions for discretionary review in a State's appellate courts. *It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial*, even though that initial-review collateral proceeding may be deficient for other reasons.

566 U.S. at 16 (emphases added; citations omitted). The procedural default in Hogan's case involves "attorney errors in . . . second or successive collateral proceedings," to which *Martinez* "does not extend." *Id.* Or stated another way, *Martinez* applies "when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding." *Id.* at 5. Here, we have attorney error in a subsequent collateral proceeding. There is no license for expanding an "equitable" exception to situations in which petitioners repeatedly fail to raise trial IAC claims in state court.

In *Martinez* itself, moreover, the petitioner failed to raise trial IAC in his first state PCR petition, and then later, with new counsel, raised it in his second petition (unlike Hogan here). *Id.* at 6–7. The state courts rejected Martinez's

second petition containing the operative claims as improperly successive, *id.*, and it was in this context that the Supreme Court recognized the narrow *Martinez* exception. The Supreme Court has been clear, however, that "*Martinez* foreclosed any extension of its holding beyond the 'narrow exception' to procedural default at issue *in that case*." *Shinn*, 596 U.S. at 387 (quoting *Martinez*, 566 U.S. at 9) (emphasis added). And *Martinez* "provides no support for extending its narrow exception to new categories of procedurally defaulted claims." *Davila*, 582 U.S. at 529–30. Yet the panel decision did so, failing to heed the Supreme Court's clear ringfencing of the *Martinez* decision. *See Shinn*, 596 U.S. at 387 ("*Martinez* was unusually explicit about the narrowness of [its] decision." (quotations omitted)).

The panel majority reached a different conclusion on the theory that even if Hogan had raised his trial IAC claims in his second state PCR petition, Nevada courts still would have found them procedurally defaulted under its successive petition bar. *Hogan*, 140 F.4th at 1029–30 & n.10 (citing Nev. Rev. Stat. § 34.810). For that reason, the panel regarded "the failure of Hogan's first PCR counsel to raise the relevant trial IAC claims" as the relevant "cause" because it "impeded Hogan's efforts to comply with Nevada's procedural rule that all postconviction claims must be brought in the first PCR petition." *Id.* at 1029.

The panel misunderstood the intersection between *Martinez*'s narrow exception and the law of procedural default. Although it is not even clear the panel was correct in its interpretation of state law, *see Hogan*, 140 F.4th at 1057–58 (Callahan, J., dissenting), the issue is not whether the state court would have rejected a second PCR petition as second or successive (the state court in *Martinez* did just that). Instead, the key point is that "'a habeas petitioner who

has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address' the merits of 'those claims in the first instance.'" *Davila*, 582 U.S. at 527 (quoting *Coleman*, 501 U.S. at 731–32). Under *Martinez*, which excuses ineffective assistance at the initial-review collateral proceeding, the second PCR petition is a legally sufficient opportunity to establish "cause" for the default, even if the state does not permit further merits review in those circumstances, as was the case in *Martinez* itself. 566 U.S. at 7.

That a failure to raise trial IAC claims in an initial state PCR petition could also lead to procedural defaults in third and fourth state PCR petitions does not tell us that the same "equitable" exception from *Martinez* should apply to new trial IAC claims raised in further successive state petitions. As Judge Callahan explained, because "*Martinez* is an equitable exception to the procedural default bar," "[t]he filing of a second state PCR petition shows that petitioner offered the state courts an opportunity to address the underlying constitutional issue" following the initial default. *Hogan*, 140 F.4th at 1058 (Callahan, J., dissenting). Petitioners like Hogan who fail to give the state courts that opportunity should not be rewarded with the ability to file an infinite array of new trial IAC claims that will evade long-accepted state procedural bars through the supposedly limited *Martinez* exception.

In short, the panel's determination that IAC in the first PCR petition establishes cause for failure to raise trial IAC in any subsequent state petition contradicts the theory of *Martinez*, fails to mind the Supreme Court's efforts to cabin *Martinez*, and is at odds with *Martinez*'s caveat that its

"holding . . . does not concern attorney errors in . . . second or successive collateral proceedings."  566 U.S. at 16.

### III

The panel's extension of *Martinez* is not only incorrect as a matter of law but will likely lead to the "significant systemic costs" that the Supreme Court sought to avoid in refusing to expand *Martinez* any further.  *Davila*, 582 U.S. at 535.  The adverse consequences that will flow from the panel's decision underscored the need for en banc review.

The rule of decision in the panel opinion is that ineffective assistance of counsel in initial PCR proceedings serves as "cause" for raising new trial IAC claims in a third or any further successive PCR petition, no matter how removed in time from the underlying conviction or how successive the state filing.  *Hogan*, 140 F.4th at 1029–30.  In this case, Hogan filed his third state PCR petition in 2004, and his fourth one in 2008.  *Id.* at 1014.  Both were successive and untimely.  Yet under the panel decision, it is the alleged IAC in the first state PCR proceedings in 1987 that can serve as the "cause" to excuse the procedural default in the later-filed claims.  The result is that a federal habeas petitioner can pin new trial IAC claims to new PCR petitions and take advantage of *Martinez* due to alleged ineffectiveness of counsel in the original PCR proceeding.  This will inevitably "flood the federal courts," *Davila*, 582 U.S. at 535, with new, defaulted claims of trial IAC many years removed from the underlying conviction and initial state PCR proceedings.

We can see what will happen system-wide based on this very case.  The panel's "[g]uidance on remand" directs the district court to apply the "particularly complex" analysis associated with the rest of the *Martinez* inquiry to entirely

new IAC claims that no court has ever reviewed. *Hogan*, 140 F.4th at 1031–32. In this case, that means wading through state court proceedings and records from a 1985 capital trial and 1987 PCR proceeding just to determine if the full *Martinez* test is met and cause and prejudice shown. *But see Davila*, 582 U.S. at 536–37 (rejecting expansion of *Martinez* where "[e]ach additional claim would require the district court to review the prisoner's trial record, appellate briefing, and state postconviction record to determine the claim's viability," an effort that "could be repeated at each level of federal review"); *Hogan*, 140 F.4th at 1060 (Callahan, J., dissenting) ("Are any of the participants in the trial, other than Hogan, still alive?"). And if the *Martinez* exception is fully met, the court would then have to review the merits of the long-defaulted claims. This is a significant burden for the district court in just this one case, to say nothing of the many other habeas cases where the panel's rule of decision will be implicated.

The panel suggested two reasons why its decision "will not expand *Martinez* beyond its carefully circumscribed limits." *Hogan*, 140 F.4th at 1031. Neither withstands scrutiny. *First*, the panel in a footnote asserted that its "ruling turns on the particulars of Nevada law" because Nevada does not recognize the *Martinez* exception as a matter of state law. *Id.* at 1030 n.9. But Nevada is hardly the only State in this Circuit to reject *Martinez*. *See Cunningham v. Premo*, 373 P.3d 1167, 1178 (Or. App. 2016) ("We therefore decline to extend the Supreme Court's rationale in *Martinez* to post-conviction claims that are barred as successive."); *Johnson v. State*, 395 P.3d 1246, 1261 (Idaho 2017) ("[W]e decline to apply *Martinez* in our state courts."); *State v. Evans*, 506 P.3d 819, 826 (Ariz. Ct. App. 2022) ("*Martinez* pertains to federal habeas actions. It

does not entitle Evans to raise precluded state claims."); *see also Matter of Tricomo*, 463 P.3d 760, 774 n.8 (Wash. App. 2d 2020) (refusing to extend filing deadline for personal restraint petition based on *Martinez* because Washington does "not rely on federal habeas procedure to determine [its] statutory authority with respect to PRPs"). And every State of which I am aware maintains in some form a bar on second or successive PCR petitions. Nothing particular about Nevada law suggests that the panel's decision will be any less disruptive of our system of federal habeas review.

*Second*, the majority references what it described as the "unique procedural history" of this case, which involved the district court staying proceedings and repeatedly allowing Hogan to return to state court. *Hogan*, 140 F.4th at 1031. To be clear, however, nothing about the panel's decision is limited to cases involving these features, or to pre-AEDPA cases. The panel's rule of decision will apply across the habeas dockets of our district courts. And as we know from our work in this area, habeas cases often present unique and prolonged procedural histories, involving dated convictions and petitioners frequently returning to state court to pursue unexhausted claims. There are ample reasons to think that the panel's decision will have a significant system-wide effect, especially considering our petitioner-friendly (post-AEDPA) case law on the statute of limitations and stays of federal proceedings for exhaustion of claims in state court. *See, e.g.*, *Blake v. Baker*, 745 F.3d 977, 983–84 (9th Cir. 2014) (concluding that district court abused its discretion in refusing to grant a stay to allow petitioner to return to state court to pursue unexhausted claims and holding that "good cause" for granting a stay "cannot be any more demanding than a showing of cause under *Martinez* to excuse state procedural default"); *Ross v. Williams*, 950 F.3d 1160,

1167–68 (9th Cir. 2020) (en banc) (holding that, under AEDPA's statute of limitations, a claim in a new petition relates back to an earlier one when based on facts contained in exhibits attached to the original petition, so long as the "original . . . petition and attached exhibit contain core facts to which claims in [an] amended petition relate back").  And even if some newly presented claims in successive petitions may fail on other grounds, district courts will no longer be able to take the most straightforward path of rejecting them as procedurally barred.

If anything, moreover, the panel's expansion of *Martinez* will lead federal habeas petitioners to file even more successive and untimely state PCR petitions and associated requests for stays of federal proceedings, given that these petitions now stand a much greater chance of benefiting from the *Martinez* exception after their denial in state court. The feedback effect of the panel decision will be to create even more work for district courts in this area, as to long-final convictions.

In defending what it concedes is an "unusual result," the panel majority's statement respecting the denial of rehearing en banc suggests that the district court's stays were improper because there "was no serious prospect that Nevada courts would consider Hogan's newly raised trial IAC claims on the merits."  Statement at 11.  But I see no apparent support for the panel's supposition that the district court inexplicably entered stays without justification and that the state unwittingly went along with this.  As noted, our case law on stays is favorable to petitioners.  *See Blake*, 745 F.3d at 983–84.  And in the only stay it entered after *Rhines v. Weber*, 544 U.S. 269 (2005), the district court acknowledged the *Rhines* standard.  Regardless, the panel's discussion on this point is relevant only to the amount of time it took for this

case to be litigated in district court.  It does not change the fact that, under the panel's decision, a district court will still need to consider new trial IAC claims under the panel's expansion of *Martinez*.  Even if petitioners like Hogan are not allowed to return to state court because doing so would be deemed futile, they now have "cause" for the defaults under the panel's decision.  District courts will therefore still need to spend resources evaluating these new claims and assessing impediments to their review, except without the straightforward offramp of finding the claims procedurally defaulted.  Even without stays and return trips to state court, the unjustified burden on district courts will remain substantial.

*        *        *

The panel erred in holding that Hogan can invoke a limited equitable exception to the ordinary rules of procedural default after he committed multiple procedural defaults over the course of seventeen-plus years.  Because the panel decision is contrary to Supreme Court precedent and will impose significant and unwarranted costs, I respectfully dissent from the denial of rehearing en banc.